FILED

2008 Feb-12  AM 10:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | |
|---|---|
| **DANNY W. RIVERS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  6:07-CV-1001-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner, Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Danny W. Rivers (hereinafter "Mr. Rivers") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act (hereinafter the "Act").  He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Secretary"), which denied his application for Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB").  Mr. Rivers timely pursued and exhausted his administrative remedies available before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Act.[1]

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Rivers was a 42-year-old male at the time of his hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 27, 41). He has a high school education. (Tr. 86). His past work experiences include employment as a furniture assembler, a sanitation worker, a mobile home assembler, a truck driver, and a construction worker. (Tr. 81). Mr. Rivers claims he became disabled on July 15, 2004, due to back and feet problems, Hepatitis C, and depression. (Tr. 51, 80, 270). His last period of work ended in July 2004. (Tr. 271).

Mr. Rivers filed his application for a period of disability and DIB on September 8, 2003. (Tr. 41). He also filed a Title XVI application for SSI on September 8, 2003, alleging a disability onset date of June 18, 1997. (Tr. 41). The claim was denied by the Commissioner on January 26, 2004. (Tr. 30). Mr. Rivers filed a timely written request for a hearing on February 11, 2004. (Tr. 34). The hearing was held on March 7, 2005. (Tr. 21). At the hearing, the onset date was amended to July 15, 2004. (Tr. 271). The ALJ concluded that Mr. Rivers was not disabled and denied his application on July 14, 2005. (Tr. 12-27).

Mr. Rivers filed a complaint on July 30, 2005, which asks this court to review the ALJ's decision. (Doc. 6). This court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW[2]

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390, 41, 91 S. Ct. 1420, 1421, 1432, 28 L. Ed 2d 842 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish the entitlement for a period of disability, a claimant must be disabled as defined by the Act and the Regulations

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion shall be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

promulgated thereunder.[3]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[3]The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 51 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord, Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy.  *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Mr. Rivers has not engaged in substantial gainful activity since the amended alleged onset of his disability on July 15, 2004.  (Tr. 25).  He also found that, in combination, Mr. Rivers's degenerative disc disease of the lumbar spine at L5-S1, chronic obstructive pulmonary disease, chronic tobacco use, hepatitis C, depressive disorder, not otherwise specified, and anxiety disorder, not otherwise specified, are impairments considered "severe" based on the requirements in Regulations 20 C.F.R. § 404.1520(c) and § 416.920(c).  (Tr. 20, 26).  The ALJ then found that the medically determinable impairments, in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 Appendix 1, Subpart P, of the Social Security Regulations.  (Tr. 26).

The ALJ concluded that Mr. Rivers's impairments prevent him from performing his past relevant work. (Tr. 26). The ALJ determined that Mr. Rivers retains a residual functioning capacity (hereinafter "RFC") to perform a significant range of light work activities.[4] (Tr. 23, 26).

The vocational expert (hereinafter the "VE") testified that Mr. Rivers would not be able to perform any of his past relevant work which ranged from medium to heavy in exertion, and that Mr. Rivers did not acquire any transferable skills from his past relevant work to his current RFC consistent with the description of his previous jobs as contained in the _Dictionary of Occupational Titles_.[5] (Tr. 23, 24). The ALJ then considered Mr. Rivers's capacity for light work, his age, his education, and his work experience under the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter the "grids"). (Tr. 24).

---

[4]Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range to light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b); _see also Walker v. Bowen_, 826 F.2d 996, 1000 (11th Cir. 1987).

[5]The Dictionary of Occupational Titles provides different examples of work activities that fall within the residual functioning capacity for medium work. (Washington, D.C.: U.S. Dept. of Labor, Employment and Training Administration: U.S. G.P.O., 1993). Available online at: http://www.occupationalinfo.org.

In reliance on the grids, the ALJ concluded that Mr. Rivers was not under a disability at any time through the date of the ALJ's decision and, therefore, was not eligible for a period of disability, DIB, and not eligible for SSI under §§ 216(i), 223, 1602, and 1614(a)(3)(A) respectively, of the Act.  (Tr. 27).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence.  42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1006 (5th Cir. 1980)).[6]  Mr. Rivers alleges that the ALJ's RFC finding was not supported by substantial evidence and that the ALJ failed to apply the correct legal standard in making his decision.  (Doc. 6 at 1).  In its review, this court finds that the ALJ's decision was supported by substantial evidence and that the ALJ applied the correct legal standard.

---

[6]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

I.    **THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY FINDINGS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Mr. Rivers asserts that (1) the ALJ failed to fully and fairly develop the record, (2) the ALJ failed to consider obesity in his RFC findings, and (3) the VE's testimony did not constitute substantial evidence.  (Doc. 6 at 5, 7, 9).

A.    **The ALJ fully and fairly developed the record.**

Mr. Rivers argues that the ALJ failed to fully and fairly develop the record. (Doc. 6 at 7).  Although "[t]here must be a clear showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development," *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997), an ALJ "has a basic obligation to develop a full and fair record."  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham*, 129 F.3d at 1422.  A full and fair record not only ensures that the ALJ has fulfilled his "duty . . .  to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," but it also enables the reviewing court "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence."  *See Welch v. Bowen,* 854 F.2d 436, 440 (11th Cir. 1988) (internal quotations and citations omitted).

Mr. Rivers argues that the ALJ should not have given substantial weight to the

8

opinion of Dr. Romeo and should have ordered an updated consultative examination in order to fully develop the record. (Doc. 6 at 7). Mr. Rivers contends that the opinion of Dr. Romeo was outdated at the time of the decision and did not take account of the medical records received into the record thereafter. (Doc. 6 at 5). Specifically, Mr. Rivers argues that the medical record reveals a deterioration in his impairments from the time of Dr. Romeo's opinion that would reasonably affect his physical RFC at the time of adjudication. (Doc. 6 at 6). The Commissioner asserts that the burden of providing relevant medical and other evidence falls upon Mr. Rivers and that the record contained sufficient evidence for the ALJ to make an informed decision. (Doc. 7 at 10, 11).

"[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary to make an informed decision." *Reeves v. Heckler,* 734 F.2d 519, 522 (11th Cir. 1984). In support of his claim, Mr. Rivers relies upon *Reeves* to argue that the ALJ should have ordered an updated consultative examination. (Doc. 6 at 7). In that case, the court vacated and remanded where the ALJ failed to order a further consultative examination. 734 F.2d at 522.

Although the ALJ did not order a further consultative examination, the present case is distinguishable from *Reeves*. In *Reeves*, the Social Security Administration's (hereinafter the "SSA") own consulting physician recommended that the claimant be

further evaluated by a specialist.  The Eleventh Circuit ordered that on remand the ALJ should consider the need for a further evaluation.  In the present case, no physician has made a recommendation that Mr. Rivers submit to a further consultative examination.  In *Good v. Astrue*, the Eleventh Circuit distinguished its decision in *Reeves* holding that where "no other physician recommended an additional consultation, and the record was sufficiently developed for the ALJ to make a determination . . . the ALJ need not order an additional consultative examination where the record was sufficient for a decision."  *Good*, 240 Fed. Appx. 399, 404 (11th Cir. 2007).

Similar to the *Good* decision, in the present case there has been no physician recommendation for a further consultative examination and the record has been sufficiently developed for the ALJ to make a determination.  The ALJ considered the medical reports (including medical opinions) provided by Mr. Rivers, as well as the testimony of the VE.  (Tr. 25).  Further, the ALJ described in detail his consideration of the physical and mental evaluations of Mr. Rivers.  (Tr. 25).  And, although he gave great weight to the opinion of Dr. Romeo, the ALJ's RFC finding was more limited than that of the doctor.  (Tr. 25, 26, Finding No. 6).  While the ALJ found that some evidence, like Mr. Rivers's consistent and continuing treatment for chronic lower back and leg pain, corroborated the claims of disability, he also determined that

other evidence, such as the lack of objective and supporting laboratory results, contradicted the claims. (Tr. 19, 23). "[C]hoosing between conflicting evidence is a task particularly suited to the fact finder, and we will not disturb such a determination on appeal." *Landry v. Heckler,* 782 F.2d 1551, 1554 (11th Cir. 1986) (quoting *Hand v. Heckler,* 761 F.2d 1545, 1549 (11th Cir. 1985), *vacated and reh'g en banc granted sub. nom. Parker v. Heckler*, 774 F.2d 428 (11th Cir. 1985)). Given the depth and explicitness of the ALJ's considerations, there is substantial evidence that the ALJ fully and fairly developed the record.

### B.   The ALJ properly considered obesity in his RFC findings.

Mr. Rivers argues that the ALJ's RFC findings are not based on substantial evidence because the ALJ failed to consider obesity in contradiction of the requirements of Social Security Ruling 02-1p (hereinafter the "Ruling"). (Doc. 6 at 7-8). Specifically, he argues that the ALJ's failure to mention obesity or the Ruling in the decision, apart from reporting on Dr. Romeo's diagnosis of obesity, is evidence that the ALJ did not factor obesity into his RFC finding.

The purpose of the Ruling is "[t]o provide guidance on SSA policy concerning the evaluation of obesity in disability claims filed under titles II and XVI of the Social Security Act (the Act)." SSR 02-01P, 2000 WL 628049, at *1 (S.S.A.). Question Eight of the Ruling asks: "How do we evaluate obesity in assessing Residual

Functional Capacity . . . ." *Id.*, at *6.  The last sentence of the answer provides that the ALJ "will explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations."  *Id.*, at *7.  It is upon this statement which Mr. Rivers relies to assert that the ALJ failed to consider obesity in his RFC findings.  However, Mr. Rivers fails to cite any statement in the Ruling or any relevant case law that requires that the ALJ's decision be vacated or remanded where he neglects to explain his conclusions on obesity.

In *Wind v. Barnhart*, the Eleventh Circuit held that the ALJ's failure to include obesity in its list of the claimant's severe impairments was not error.  *Id.*, 133 Fed. Appx. 684, 690-91 (11th Cir. 2005).  While recognizing that obesity should be considered among other impairments, the court cited the lack of evidence in the record showing that the claimant's obesity affected her ability to perform . . . work-related activities."  *Id.*, 133 Fed. Appx. at 690-91.  In the present case, Mr. Rivers did not claim obesity as an impairment nor has he offered evidence that his obesity has affected his ability to perform work-related activities.

Even assuming that the failure to mention obesity in the RFC finding was error on the part of the ALJ, it would be at most harmless error.  "Procedural perfection in administrative proceedings is not required. [The] court will not vacate a judgment unless the substantial rights of a party have been affected."  *Mays v. Bowen*, 837 F.2d

1362, 1364 (5th Cir. 1988).  The record here demonstrates that the ALJ was aware of Dr. Romeo's diagnosis of obesity and gave great weight to his diagnosis and opinion. (Tr. 25, 152-61).  There is no evidence to indicate that remanding for explicit consideration of obesity and explanation by the ALJ of how it affected his RFC finding would produce a different result.  Because there is no evidence that the ALJ's failure to mention obesity affected his RFC findings, there is similarly no evidence that Mr. Rivers's substantial rights have been affected.  "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Gulf States Utilities Co,. v. Ecodyne Corp.,* 635 F.2d 517, 520 (5th Cir. 1981); *see also Woodard v. Apfel*, No. CIV.A.99-0926-RV-L, 2001 WL 102354, at *3 (S.D. Ala. Jan. 08, 2001).  Remanding this case for a reconsideration of obesity would not produce a different result.  Thus, any error that may have occurred regarding Mr. Rivers's obesity diagnosis was harmless and this court will neither remand nor vacate the judgment on this basis.

      C.    **The Vocational Expert's testimony constitutes substantial evidence.**

Mr. Rivers also argues that the VE's testimony does not constitute substantial evidence because the ALJ did not provide him with a comprehensive hypothetical that included obesity.  In support of his argument, he cites *Pendley v. Heckler*, 767

F.2d 1561 (11th Cir. 1985).  In *Pendley*, the Eleventh Circuit held that the decision of the ALJ, which was based significantly on the expert testimony, was unsupported by substantial evidence where the hypothetical question upon which the VE based his testimony did not assume the claimant's conditions, which the ALJ found to be severe impairments limiting the claimant's ability to work.  *Id.*, 767 F.2d at 1563.  The Eleventh Circuit reversed and remanded based on its determination that it could not assume that the VE would have given the same answer had the ALJ instructed him to consider all of the claimant's severe impairments.  *Id.*

In *Wind*, however, the Eleventh Circuit distinguished its holding in *Pendley* by emphasizing that it is the ALJ's failure to include either the claimant's condition(s) *or* limitation(s) in the hypothetical posed to the VE, when he has determined that it is a severe impairment, which will cause the court to find that the ALJ's decision is not supported by substantial evidence.  133 Fed. Appx. at 694.  Where the ALJ had properly included the limitation(s) of the claimant but failed to specifically cite his severe impairment(s) in the hypothetical, the court found that the hypothetical question posed accurately comprised all of the claimant's impairments, and that the ALJ properly relied upon the VE's testimony as substantial evidence.  *Id.*

In the present case, the ALJ considered Mr. Rivers's diagnosis of obesity in his decision but properly determined that it did not constitute a severe impairment

limiting his ability to work.  Thus, it was not necessary, as in *Pendley*, to pose a hypothetical to the VE that included the condition of obesity, as it was not a severe impairment.  Moreover, in the hypothetical actually posed to the VE, the ALJ did ask him to assume that Mr. Rivers had a need to sit or stand due to fatigue, though not due to obesity but rather because of Hepatitis C.  (Tr. 287).  Therefore, even though the ALJ found that Mr. Rivers's obesity was not a severe impairment, the inclusion of such a limitation in the hypothetical, which is consistent with the condition of obesity, would alternatively satisfy *Wind*'s requirement that the hypothetical posed to the VE contained all of the claimant's limitations.  Accordingly, the ALJ properly relied on the VE's testimony as substantial evidence and the court affirms the ALJ's decision as to this issue.

## II.  THE ALJ APPLIED THE CORRECT LEGAL STANDARD.

Mr. Rivers finally contends that the ALJ failed to follow the pain standard set by the Eleventh Circuit.

### A.  The ALJ properly followed the pain standard set by the Eleventh Circuit.

Mr. Rivers argues that the ALJ failed to follow the pain standard set by the Eleventh Circuit.  (Doc. 6 at 9).  Specifically, he alleges that the ALJ's credibility findings are against the weight of the evidence in the record.  (Doc. 6 at 9).  The

Eleventh Circuit has supplied the "pain standard" that applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms. *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). In determining whether to credit a claimant's subjective testimony of pain or other symptoms, the pain standard requires

> evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560; *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991); *Landry,* 782 F.2d at 1553 (citing *Hand*, 761 F.2d at 1548).

Applying this standard to the present case, the ALJ determined that Mr. Rivers's claim did satisfy the first prong of the pain standard, because the ALJ found Mr. Rivers's degenerative disc disease, chronic obstructive pulmonary disease, and Hepatitis C to be severe impairments. (Tr. 20). However, the ALJ determined that although "there is evidence of a condition, or a combination of conditions, which could reasonably be expected to produce the level of pain or other symptoms which [Mr. Rivers] alleges precludes him from working, such allegations are inconsistent with [Mr. River's] reported activities of daily living, the medical records in evidence,

and with the opinions of the consultative physical examiner indicating that the claimant could perform medium to light work activities (see Exhibit 4F)." (Tr. 21). In arriving at his decision, the ALJ discredited the testimony of Mr. Rivers regarding the severity of his symptoms.  However, the ALJ did partially credit Mr. Rivers's subjective complaints of chronic back and leg pain "to the extent that the impairments would preclude [him] from being able to perform heavy lifting and carrying of items, and sustained activities at the more strenuous levels of exertion."  (Tr. 22).

If an ALJ discredits a claimant's testimony regarding the severity of his or her symptoms, the ALJ must "articulate explicit and adequate reasons" for doing so. *Foote*, 67 F.3d at 1561-62.  In the present case, the ALJ did in fact articulate explicit reasons for discrediting Mr. Rivers's testimony regarding his symptoms.  More particularly, the ALJ cited nerve conduction studies performed in 2002 that were normal and that did not indicate peripheral neuropathy or radiculopathy in Mr. Rivers's lower extremities.  (Tr. 21).  The ALJ further mentioned that Mr. Rivers had never been treated at a pain clinic for chronic, intractable pain, nor ever required hospitalizations or frequent emergency medical treatment for back pain.  (Tr. 21). The ALJ also cited the results of Mr. Rivers's consultative physical examination and the lack of medical evidence therein which would support the subjective complaints. (Tr. 21-22).  Furthermore, the ALJ noted the lack of any specific treatment for

17

Hepatitis C and the results of relevant laboratory analyses as contrary to his subjective complaints of pain. (Tr. 22). As a final articulation, the ALJ noted:

> The lack of objective medical findings confirming the severity of the claimant's alleged impairments . . . the lack of medically documented complaints of severe pain despite medication, along with the evidence from the consultative examiners indicating that the claimant was capable of performing light work activities, and the claimant's testimony at the hearing that his pain was adequately controlled with the use of medication, leads the undersigned to conclude that he does not suffer from chronic lower back pain, radicular pain or numbness, hepatitis C, depression, anxiety, chronic fatigue, or any other impairment to the extent that he can be determined disabled at all levels of exertion.

(Tr. 23). Therefore, the ALJ articulated explicit and adequate reasons for discrediting Mr. Rivers's testimony regarding the severity of his symptoms. Furthermore, the ALJ's credibility findings are supported by the weight of the evidence. Accordingly, the court finds that the ALJ properly applied the pain standard set by the Eleventh Circuit to determine that Mr. Rivers is not disabled within the meaning of the Act.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submission of the parties, the court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence. Accordingly, the decision of the Commissioner will be affirmed by separate order.

18

**DONE** and **ORDERED** this the 12th day of February, 2008.

**VIRGINIA EMERSON HOPKINS**

United States District Judge